UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELINDA DUNN, AS NEXT FRIEND AND CUSTODIAN OF THE MINOR CHILD, J.D., | ) ) ) |
| Plaintiff, | ) ) No. 3:19-cv-00920 |
| v. | ) ) ) |
| WILLIAM CAMERON CONE and MARY JO CONE, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM**

Pending before the court are two Motions to Dismiss and a Motion to Strike. Mary Jo Cone has filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Docket No. 18), to which Melinda Dunn has filed a Response (Docket No. 23), Mary Jo Cone has filed a Reply (Docket No. 24), and Dunn has filed a Sur-Reply (Docket No. 30). William Cone has filed a Partial Motion to Dismiss (Docket No. 20), to which Dunn has filed a Response (Docket No. 27), William Cone has filed a Reply (Docket No. 28), and Dunn has filed an additional Sur-Reply (Docket No. 31). Additionally, Mary Jo Cone has filed a Motion to Strike Portions of Affidavits Submitted by Plaintiff Containing Inadmissible Hearsay in the response to her motion to dismiss (Docket No. 25), to which Dunn has filed a Response (Docket No. 29). For the reasons discussed below, William Cone's motion to dismiss will be denied, Mary Jo Cone's motion to dismiss will be granted, and her motion to strike will be denied as moot.

**I. BACKGROUND**

William and Mary Jo Cone are married and live in Missouri. (Docket No. 1 ¶¶ 1, 4). J.D. is William's son. (*Id.* ¶ 1). After William and J.D.'s mother divorced, under Missouri law in 2005,

J.D. lived primarily with his mother in Tennessee while custody litigation ensued in Tennessee's courts. (*Id.* ¶¶ 11, 13). Along the way, Tennessee Department of Children's Services investigated alleged sexual abuse by William of J.D., but no prosecution followed. (*Id.* ¶¶ 28, 30–32). In 2009, William was awarded primary custody of J.D. (*Id.* ¶ 45). J.D. lived with William and Mary Jo in Missouri for most of the year and for the summer, with his mother in Tennessee. Sometimes one parent would visit J.D. at the other parent's residence. (*Id.* ¶¶ 46–47).

This was the case when William visited Nashville one summer and allegedly raped J.D. in a room at the Hotel Preston. (*Id.* ¶ 48). According to the Complaint, J.D., reported that rape in a Federal Bureau of Investigation investigation into William. (*Id.*). J.D. also told the FBI that William raped him nearly every weekend when he lived in Missouri. (*Id.* ¶ 49). The conclusion of that FBI investigation is unclear at this time, but the Complaint reports that Tennessee criminal charges against William for Rape of a Child and Aggravated Sexual Battery have been "since resolved by entry of a conditional plea." (*Id.* ¶ 7).

Melinda Dunn filed this lawsuit as J.D.'s next friend, alleging intentional infliction of emotional distress, assault, battery, and false imprisonment by William and negligence by Mary Jo for not preventing the alleged harm to J.D. Mary Jo moves to dismiss all claims against her because she has no contacts with Tennessee related to this lawsuit (Docket No. 18), and William moves to dismiss all claims except for the one alleged assault that occurred at the Hotel Preston in Tennessee (Docket No. 20).

Dunn provides three affidavits to show Mary Jo's minimum contacts with Tennessee. Melinda Dunn, J.D.'s maternal aunt, reports that Mary Jo joined William to pick up or drop off J.D. for parental visitations in Tennessee during the custody dispute. (Docket No. 23-1 ¶ 6). Becky Legros was a neighbor with J.D. when he lived with his mother during the custody dispute and

2

alleges two contacts by Mary Jo in Tennessee. Legros saw Mary Jo pick up J.D. with William once and also attend a court hearing in Tennessee on another occasion. (Docket No. 23-2 ¶¶ 1–2, 4). Finally, Amy Dempsey asserts that she was present with J.D.'s mother at two custody exchanges, one when only William came to Tennessee and one other when Mary Jo came with William to pick up J.D. in Tennessee. (Docket No. 23-3 ¶¶ 1–3).

## II. LEGAL STANDARD

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id*. The party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Jurisdictional discovery is not necessary in this case because the plaintiff has provided Declarations that are sufficient to allow the court to evaluate the issue.

When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits or other preliminary materials, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Id.* In examining whether the party asserting jurisdiction has made this prima facie showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of*

3

*Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360–61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

### III. ANALYSIS

Whether the court may exercise personal jurisdiction over the defendants depends on Tennessee's long-arm statute and the constitutional principles of due process. *Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 361 (6th Cir. 2008). The inquiries merge into a constitutional due process analysis because Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process. *Bridgeport Music Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).

For due process to permit the exercise of personal jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417–18 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. General jurisdiction allows a state to exercise jurisdiction over a defendant, even if a suit does not arise out of the defendant's contacts with the state, when defendants have "substantial" contacts with the state that are "continuous and systematic." *Id.* Specific jurisdiction grants jurisdiction "only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012).

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction there, and for an individual defendant, the "paradigm" forum of general jurisdiction is the place of their domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

4

Plaintiff appears to argue that defendants had a "continuous and systematic relation to the forum" from William's contacts with Tennessee through the long custody battle and William and Mary Jo's trips to Tennessee for the court proceedings and for parental visitation with J.D. (Docket Nos. 23 at 5; 27 at 5). However, the court does not have general jurisdiction over William or Mary Jo, both Missouri residents, for their contacts with Tennessee during a custody litigation that ended in 2009. (Complaint ¶¶ 4, 45). They are not "essentially at home" in Tennessee. *Daimler*, 571 U.S. at 137, 139.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (internal quotations and alterations omitted). In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit established a three-part test for determining whether the exercise of specific jurisdiction was consistent with the principles of due process:

(1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state."

(2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state.

(3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

401 F.2d 374, 381 (6th Cir. 1968). All three *Mohasco* elements must be satisfied to invoke specific jurisdiction, but purposeful availment is the *sine qua non* of specific jurisdiction. *Id.* at 381–82.

"Purposeful availment is something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to make contact with the forum. *Bridgeport Music*, 327 F.3d at 478 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002)). "Purposeful availment . . . is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum [s]tate,

5

and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505–06 (6th Cir. 2014) (quoting *Neogen Corp.*, 282 F.3d at 890) (noting that the "analysis on the first prong of the [*Mohasco*] test involves some overlap with the analysis on the second prong"). Tennessee law provides that involvement in a child-custody proceeding does not alone subject a person to personal jurisdiction for another proceeding. Tenn. Code Ann. § 36-6-212(a); *see Kljajic v. Kljajic*, No. M200201294COAR3CV, 2003 WL 21954189, at *1 (Tenn. Ct. App. Aug. 15, 2003) (stating that a non-resident can participate in an in-state "custody proceeding without being subject to the personal jurisdiction of this state pursuant to [Tenn. Code Ann.] § 36-6-212(a)"). Additionally, in *Kulko v. Superior Court*, the Supreme Court held that the single act of a parent agreeing to a visitation arrangement for a child to stay with the other parent in the forum state did not provide a forum state with personal jurisdiction over the non-resident parent. 436 U.S. 84, 94, 97 (1978).

On the second, "arise from" prong, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 768 F.3d at 506–07. The "arising from" requirement "is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state. 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000) (quoting *Mohasco*, 401 F.2d at 384 n.29). The Sixth Circuit requires that the defendant himself be a proximate cause between his contacts that establish purposeful availment and the alleged cause of action. *Beydoun*, 768 F.3d at 507–08 (applying a proximate causation standard, which is higher than but-for causation).

6

Finally, when the first two *Mohasco* elements are satisfied, then the court will consider whether it is reasonable to exercise jurisdiction. "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the [controversy]." *Schneider v. Hardesty*, 669 F.3d 693, 703–04 (6th Cir. 2012). Only in the "unusual case" will it not be reasonable to exercise jurisdiction when the other two *Mohasco* factors are satisfied. *Theunissen*, 935 F.2d at 1461.

### *i. Specific personal jurisdiction over William Cone*

William does not contest this court's jurisdiction over the alleged sexual assault that occurred at the Hotel Preston in Nashville, but argues that he did not have substantial contacts with Tennessee for jurisdiction over the remaining claims of alleged sexual assaults that occurred in Missouri. (Docket No. 21 at 6). In response, the plaintiff argues that William availed himself through an "extensive presence" in Tennessee for the custody litigation and to exercise parenting time until 2009, so he could anticipate being haled into a Tennessee court. (Docket No. 27 at 5–8). The plaintiff argues that his contacts were a "substantial part of the tortious conduct" alleged because William used his trips to Tennessee to exercise parenting time to bring J.D. to Missouri, where he was assaulted. (*Id.* at 7).

The plaintiff cites to *S.L. v. Steven L.* as an example of minimum contacts with a forum state, where a father's connection to the forum state was to pick up his child for parental visitations out of the state, where he then abused the minor child during five visitations. 742 N.W.2d 734, 755 (Neb. 2007); (Docket No. 27 at 6). In *S.L.*, the Nebraska Supreme Court held that minimum contacts existed because it was "not simply [defendant's] presence in Nebraska to exercise

7

visitation rights with a Nebraska resident, but, rather, the alleged intentional misuse of such rights as a means of inflicting intentional harm upon S.L., as alleged by [plaintiff], which constitute[d] the 'substantial connection' between [defendant] and Nebraska." *Id.* at 655, 657. To distinguish from other cases that held that visitation was not enough for minimum contacts by a non-resident parent, the court in *S.L.* reasoned that the defendant aimed his tortious conduct at Nebraska because any abuse inflicted upon the child "in Canada would have foreseeable consequences on the child when she was returned to Nebraska." *Id.* William argues that *S.L.* conflicts with the Supreme Court's holding in *Walden* that minimum contacts cannot only be based on the plaintiff's injury in the forum. (Doc. Nos. 28 at 4; 31 at 3); *see Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) ("[A]fter *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." (internal quotations omitted)). However, the forum state contacts in *S.L.* came from more than just an injury to a forum state resident—the defendant had also travelled to Nebraska 12 to 14 times to pick up the child to bring her to Canada for parenting time, where the alleged abuse occurred during five visitations. *S.L.*, 742 N.W.2d at 649.

Similarly, plaintiff has made a *prima facie* showing of purposeful availment because William's contacts with Tennessee were significantly more extensive than a rare visit to the state, or the one act of agreeing to allow his children to reside in the forum in *Kulko*, 436 U.S. at 94, 97. Instead, William made deliberate and directed contacts with Tennessee on a routine basis during the custody dispute from 2005 to 2009, when he visited the state to pick up J.D. to bring him for parental visitation time in Missouri, and then returned J.D. to his then-primary residence in Tennessee. The contacts continued after the custody litigation because plaintiff alleges that William exchanged custody at least twice per year - when J.D. spent the summer in Tennessee and

8

when William visited for Father's Day. (Complaint ¶ 47). These are sufficient minimum contacts. *See Bridgeport Music*, 327 F.3d at 478.

William's contacts with the forum all related to custody and/or treatment of J.D. Those contacts are substantially connected with the operative facts of this case involving abuse of J.D. *See Beydoun*, 768 F.3d at 506–07; *Calphalon Corp.*, 228 F.3d 718, 723–24. Further, William picking up J.D. in Tennessee to exercise his visitations in Missouri was a proximate cause of his alleged sexual abuse of J.D. in Missouri during those visitations. *See Beydoun*, 768 F.3d at 506–08. The causes of action against William arise from his purposeful availment of Tennessee jurisdiction, meeting the second, "arises from," element of the *Mohasco* test.

Finally, exercising personal jurisdiction over William in Tennessee is reasonable. Plaintiff has a strong interest in obtaining relief for alleged sexual assault, and the burden on William to defend this lawsuit in the state where his son resides, and where William allegedly abused him at least once, is not unreasonable. Tennessee has a strong interest in not having children with custody agreements established under the state's laws taken out of the state and sexually abused. After committing one alleged rape in Tennessee at the Hotel Preston, William should reasonably anticipate being haled into a Tennessee court for any abuse to that same victim. He also should anticipate being haled into Tennessee court for abuse to a child whose custody was litigated in Tennessee courts and whose abuse by William was twice investigated in Tennessee. *See Schneider*, 669 F.3d at 703–04. Plaintiff has made a *prima facie* showing of all three *Mohasco* elements to show specific personal jurisdiction over William and the court will not dismiss any claims against him based on a lack of personal jurisdiction.

### ii. Specific personal jurisdiction over Mary Jo

9

Unlike William, Mary Jo's visits to Tennessee were not a proximate cause of her connection in this suit because she did not abuse William. Mary Jo's alleged liability in this case is for not reporting to authorities the abuse occurring in her Missouri home. (Complaint ¶¶ 51–52, 65). She argues that she did not know of or participate in any improper conduct in Tennessee and that personal jurisdiction in Tennessee cannot be established over her based on William's alleged actions alone. (Docket No. 19 at 8–9).

The plaintiff argues that Mary Jo purposefully availed herself to jurisdiction in Tennessee through the times she joined William to pick up J.D. in Tennessee and attended court hearings. (Docket No. 23 at 6–7). However, the plaintiff has not alleged that Mary Jo had the same level of contacts with Tennessee as William. The affidavits offered by the plaintiff only allege that Mary Jo visited Tennessee twice with William to pick up J.D. for parental visitations, a third time to attend a court hearing, and possibly one other time in connection with the FBI investigation. (Doc. No. 23-1 ¶¶ 7–8); (Doc. No. 32-2 ¶¶ 1–2, 4 (witnessing Mary Jo pick up J.D. in Tennessee one time)); (Doc. No. 23-3 ¶¶ 1–3 (witnessing Mary Jo present one other time to pick up J.D. in Tennessee)). Those four total visits are over the fifteen-year period alleged in the Complaint. These limited contacts are far from the asserted more frequent contacts of William. The plaintiff has not shown that Mary Jo made deliberate contact with Tennessee sufficient to purposefully avail herself of the forum. *See Bridgeport Music*, 327 F.3d at 478; *Theunissen*, 935 F.2d at 1458.

Moreover, the plaintiff does not allege that the negligence cause of action against Mary Jo arises from her limited activities in Tennessee. Any availment that she may have had through trips to Tennessee for visitation and court hearings does not bear a causal relation to her alleged negligence in failing to prevent sexual abuse of J.D. in Missouri. *See Beydoun*, 768 F.3d at 507–

10

08. The alleged abuse was committed by William, and she was not a proximate cause to his abuse by routinely picking up J.D. for parental, or, stepparent, visitation. *See id.*

Without sufficient contacts to Tennessee and a lack of nexus between those contacts and the cause of action against her, Mary Jo would not anticipate being haled into Tennessee court to defend in relation to William's alleged abuse and her alleged negligence in Missouri. This court does not have personal jurisdiction over her for purposes of this lawsuit. Mary Jo's motion to dismiss will be granted for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, William Cone's Partial Motion to Dismiss (Docket No. 21) will be denied, and Mary Jo Cone's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Docket No. 18) will be granted. Additionally, because Mary Jo's motion will be granted and she will be dismissed, her Motion to Strike Portions of Affidavits Submitted By Plaintiff Containing Inadmissible Hearsay (Docket No. 25) will be denied as moot.

An appropriate order will enter.

ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE